(C. D. 1695)

J. E. BERNARD & Co., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided April 21, 1955)

*Wallace & Schwartz* (*Joseph Schwartz* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on merchandise, described as toy furniture sets of porcelain, imported from Japan on or about September 11, 1949, at 70 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as porcelain ornaments. It is claimed that the merchandise is properly dutiable at 35 per centum ad valorem under paragraph 1513 of said tariff act, as modified by the trade agreement with Mexico, T. D. 50797, as toys.

The pertinent provisions of the tariff act are as follows:

PAR. 212. China, porcelain, and other vitrified wares, * * * painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any man-

---

[1] Related mechanics' hand tools are covered in separate summaries under paragraphs 326, 340, 352, 357. 361, 362, and 397

ner, and manufactures in chief value of such ware, not specially provided for, 70 per centum ad valorem. * * *

PAR. 1513 [as modified by the trade agreement with Mexico, T. D. 50797]. Toys, and parts of toys, not specially provided for, wholly or in chief value of china, porcelain, parian, bisque, earthenware, or stoneware, 35% ad valorem.

At the trial, plaintiff called Mortimer A. Hecht, buyer and general manager of Reliance Merchandise Co., the importer of the involved merchandise. He testified that he has been with the company for 19 years and has charge of its import business. He stated that he was familiar with the items on the entry herein, described as settee, piano, chair, and table. While he no longer had samples of these items, he produced articles which he said were representative of them to a degree, particularly the chair, but cost only half as much.

These articles were received in evidence as plaintiff's collective illustrative exhibit 1. They are small decorated articles, apparently of porcelain or chinaware. The chair is about 2½ inches high, 1¼ inches wide, and about an inch deep. The other articles, which are proportionately larger than the chair, do not correspond to any of the items on the invoice.

The witness testified that his firm sold articles such as those covered by the invoice to chain stores and department stores, where they are sold in the toy department, sometimes in conjunction with miniature houses as furniture for them. He had seen them used in homes by children under 12 years of age as toys to furnish a miniature or toy house. He knew of no use for them other than as toys for the amusement of children.

On cross-examination, he stated that he had seen such articles used by ultimate consumers only in the city of Chicago and that he had seen them used by the younger children of three or four families as furniture for their play use. He explained:

JUDGE MOLLISON: When you observed these children using merchandise similar to Collective Illustrative Exhibit 1, what actually were the children doing, if anything?

THE WITNESS: Primarily most of the times I say [sic] them using it, they were playing house.

JUDGE MOLLISON: What does that mean?

THE WITNESS: They have several dolls, a collection of other type furniture, carriages, and miniature food packages.

JUDGE MOLLISON: What did they actually do? What did you see them do?

THE WITNESS: I saw them insert them in various positions in the miniature home. I saw them placed in position with foods, miniature food packages.

JUDGE MOLLISON: After they place these articles in the miniature homes, what then, if anything, did they do?

THE WITNESS: Children would make play of serving foods, arranging furniture in the houses in different positions, and in general play keeping home.

At the conclusion of this testimony, counsel for the Government stated:

MR. WELSH: If the court please, I have conferred with Examiner Linsley, and Mr. Linsley is of the opinion that articles similar to Collective Illustrative Exhibit 1 would be and are chiefly used in the manner described by this witness, and that if this merchandise were now in front of him, it would be advisorily returned as a toy.

In paragraph 1513 of the Tariff Act of 1930, as originally enacted, the term "toy" is defined as "an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development." Under this provision, it has been held that articles are required to be classified as toys, if chiefly used for the amusement of children, even though also suitable for physical exercise or mental development, and even though provided for *eo nomine* under another provision not intended to include toys, if they are, in fact, toys. *United States* v. *F. W. Woolworth Co.*, 24 C. C. P. A. (Customs) 338, T. D. 48770; *United States* v. *Louis Wolf & Co.*, 26 C. C. P. A. (Customs) 243, C. A. D. 23; *Louis Wolf & Co., Bing Wolf Corp.* v. *United States*, 19 C. C. P. A. (Customs) 132, T. D. 45258.

In view of the evidence herein and the statement of counsel for the Government, we hold that the involved merchandise consists of porcelain articles, chiefly used for the amusement of children, and that it is properly dutiable at 35 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as modified by the trade agreement with Mexico, T. D. 50797, as toys, wholly or in chief value of porcelain.

The protest is sustained, and judgment will be rendered for the plaintiff.